UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SURGIO VALENCIA BALTAZAR,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>KELLY SANTORO, Warden,<br><br>　　　　　Respondent. | No.  1:13-cv-01538-SKO  HC<br><br>**ORDER DENYING RESPONDENT'S MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**(Doc. 31)** |

Petitioner Surgio Valencia Baltazar is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  Respondent Kelly Santoro, Warden of North Kern State Prison, Delano, California, moves to dismiss counts two through six of the amended petition as untimely.  Having reviewed the record and applicable law, the Court concludes that counts two through six were timely and denies the motion to dismiss.

I.     **Procedural and Factual Background**

In January 2009, Petitioner was tried in Merced County Superior Court on two counts of carjacking (Cal. Penal Code § 215), two counts of being a felon in possession of a firearm (Cal. Penal Code § 12021(a)(1)), and misdemeanor false identification to a police officer (Cal. Penal Code § 148.9(a)).  The charges included potential sentence enhancement for personal use of a firearm (Cal. Penal Code § 12022.53(a)) with respect to the two carjacking counts.  On January

---

[1] Pursuant to 28 U.S.C. § 636(c)(1), both parties consented, in writing, to the jurisdiction of a United States Magistrate Judge to conduct all further proceedings in this case, including the entry of final judgment.

1

15, 2009, a jury found Petitioner guilty of all counts and found both charged enhancements to be true.

Following his convictions, Petitioner escaped from jail.  As a result, he was not sentenced until May 9, 2011, when the court imposed sentences in four separate cases.  Petitioner received an aggregate sentence of 22 years and four months.

On May 9, 2011, Petitioner filed a timely notice of appeal.  The California Court of Appeal affirmed on October 17, 2012.  The California Supreme Court denied Petitioner's motion for review on January 3, 2013.

On September 16, 2013, Petitioner filed the above-captioned § 2254 petition.  On October 17, 2013, the Court issued an order to show cause why the petition should not be dismissed for failure to exhaust state remedies as to claim 2 of the petition.  On January 13, 2014, Petitioner filed a motion to stay claim 1, which was exhausted, and to withdraw claim 2, which was not exhausted.  On March 12, 2014, the Court dismissed claim 2 and conditionally granted a stay of the petition pursuant to *Kelly v. Small*, 315 F.3d 1063 (9th Cir. 2003), *overruled on other grounds by Robbins v. Carey*, 481 F.3d 1143 (9th Cir. 2007).[2]  The Court found that Petitioner had satisfied the first two steps of the procedure prescribed in *Kelly*, but warned Petitioner that any claims to be exhausted in state court could be dismissed as untimely if they did not comply with the statute of limitations (28 U.S.C. § 2244(d)).

On October 29, 2013, Petitioner gave a state habeas petition to prison staff for mailing to the Merced County Superior Court.  When Petitioner heard nothing from the Superior Court by March 19, 2014, he filed a notice and request for ruling.  *See* Cal. Rules of Court, Rule 4.551(a)(3)(B).  The Superior Court did not respond.

---

[2] The stay order required Petitioner to file monthly status reports concerning his efforts to exhaust his claims.  These status reports, included in the record as Docs. 16-21 are consistent with Petitioner's claims in response to the motion to dismiss.

In the California Supreme Court on July 7, 2014, Petitioner filed a state habeas petition alleging five grounds not raised on direct appeal.  The California Supreme Court summarily denied the habeas petition on September 17, 2014.

On October 9, 2014, Petitioner filed the first amended petition in this court, consisting of the previously exhausted claim 1, and newly exhausted claims 2-5.  On April 14, 2015, Respondent moved to dismiss claims 2-5 as untimely.

## II.      Timeliness of Claims 2-5

### A.      Stay and Abeyance Under *Kelly*

*Kelly* sets forth a three-step stay and abeyance procedure under which "(1) the petitioner amends his petition to delete any unexhausted claims; (2) the court stays and holds in abeyance the amended, fully exhausted petition, allowing the petitioner the opportunity to proceed to state court to exhaust the deleted claims; and (3) the petitioner later amends his petition and re-attaches the newly exhausted claims to the original petition." *King v. Ryan*, 564 F.3d 1133, 1135 (9th Cir. 2009) (citing *Kelly*, 315 F.3d at 1070-71).  The *Kelly* procedure is risky.  "A petitioner seeking to use the *Kelly* procedure will be able to amend his unexhausted claims back into his federal petition once he has exhausted them only if those claims are determined to be timely.  And demonstrating timeliness will often be problematic under the now-applicable legal principles." *King*, 564 F.3d at 1140-41.

Respondent contends that newly exhausted claims 2-5 are untimely and must be dismissed from the first amended petition.  Petitioner contends that he filed the habeas petition including the claims in the Merced County Superior Court on or about October 28, 2013. After the Superior Court failed to rule on the notice and a subsequently filed request for ruling, Petitioner filed his petition in the California Supreme Court.  Petitioner contends that when proper tolling of the pending actions is considered, claims 2-5 are timely.

3

### B. Statutory Limitations Period

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which applies to all petitions for writ of habeas corpus filed after its enactment. *Lindh v. Murphy*, 521 U.S. 320, 327 (1997).  AEDPA provides a one-year period of limitation in which a petitioner may file a petition for writ of habeas corpus.  28 U.S.C. § 2244(d)(1).  In this case, the limitations period is measured from the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review.  28 U.S.C. § 2244(d)(1).

Direct review in the State of California ended January 3, 2013, when the California Supreme Court denied the petition for review.  The statutory limitation period began on April 4, 2013, following the expiration of the 90-day period in which to file a petition for writ of certiorari in the United States Supreme Court.  Absent tolling, the statute of limitations required Petitioner to exhaust his unexhausted claims and to file an amendment setting forth those claims no later than April 3, 2014.

### C. Tolling of the Limitations Period

Petitioner contends that claims 2-5 are timely because the statutory limitations period was tolled when he filed the state habeas petition in the Merced County Superior Court on or about October 28, 2013.  Respondent counters with documentation from the Merced County Clerk of Court reporting that no habeas petition was filed for Petitioner on or about October 28, 2013.  Doc. 37 at 4.

After referring the Court to the periodic status reports that he filed in compliance with the Court's order granting the stay, Petitioner further supports his argument with a copy of the legal mail log from Pleasant Valley State Prison showing that Petitioner's legal mail to Merced County Superior Court was mailed on October 29, 2013.  Doc. 47 at 5-6.  On March 19, 2014, when

Petitioner had heard nothing from the Merced County Superior Court regarding his state petition, he filed a notice and request for ruling pursuant to Cal. Rules of Court, rule 4.551(a)(3)(B). *See* Doc. 16.  After the Merced County Superior Court did not respond, Petitioner filed a state habeas petition on July 7, 2014, alleging five grounds not raised on direct appeal with the California Supreme Court.  *See* Doc. 20.  The Supreme Court summarily denied the habeas petition on September 17, 2014.  Doc. 25 at 35.

As a matter of policy, a *pro se* prisoner's notice of appeal is deemed "filed at the time [the] petitioner delivered it to the prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 276 (1988).  The Supreme Court reasoned:

> [W]hereas the general rule has been justified on the ground that a civil litigant who *chooses* to mail a notice of appeal assumes the risk of untimely delivery and filing, *see, e.g.*, [*In re Bad Bubba Racing Products, Inc.*, 609 F.2d 815, 816 (5th Cir. 1980)], a *pro se* prisoner has no choice but to hand his notice over to prison authorities for forwarding to the court clerk.  Further, the rejection of the mailbox rule in other contests has been based in part on concerns that it would increase disputes and uncertainty over when a filing occurred and that it would put all the evidence about the state of filing in the hands of one party.  *See, e.g., United States v. Lombardo*, 241 U.S. 73, 78 . . . . . (1916).  These administrative concerns lead to the opposite conclusion here.  The *pro se* prisoner does not anonymously drop his notice of appeal in a public mailbox—he hands it over to prison authorities who have well-developed procedures for recording the date and time at which they receive papers for mailing and who can readily dispute a prisoner's assertions that he delivered the paper on a different date.  Because reference to prison mail logs will generally be a straightforward inquiry, making filing turn on the date the *pro se* prisoner delivers the notice to prison authorities for mailing is a bright-line rule, not an uncertain one.  Relying on the date of receipt, by contrast, raise such difficult to resolve questions as whether delays by the United States Postal Service constituted excusable neglect and whether a notice stamped "filed" on one date was actually received earlier.  These questions are made particularly difficult here because delays might instead be attributable to the prison authorities' failure to forward the notice promptly.  Indeed, since, as everyone concedes, the prison's failure to act promptly cannot bind a *pro se* prisoner, relying on receipt in this context would raise yet more difficult to resolve questions whether the prison authorities were dilatory.  The prison will be the only party with access to at least some of the evidence needed to resolve such questions—one of the vices the general rule is meant to avoid—and evidence on any of these issues

> will be hard to come by for the prisoner confined to his cell, who can usually only guess whether the prison authorities, the Postal Service, or the court clerk is to blame for the delay.

487 U.S. at 275-76.

Although *Houston* Court addressed the timeliness of a prisoner's filing a notice of appeal in the federal district court, the same rule applies to filing habeas petitions in state and federal courts. *Huizar v. Carey*, 273 F.3d 1220, 1223 (9th Cir. 2001).

In *Huizar*, the Ninth Circuit applied "prison mailbox rule" approved in *Houston* to a case in which the *pro se* prisoner's state habeas petition was "never received or filed in the state court." 273 F.3d at 1222. The appellate court's reasoning echoed the Supreme Court's reasoning that a "prisoner's control of the filing of his petition ceases when he delivers it to prison officials." *Huizar*, 273 F.3d at 1223.

In cases in which the petition was not received or filed in state court, however, application of the mailbox rule requires that the prisoner "diligently follow[ed] up his petition once he . . . . . fail[ed] to receive a disposition from the court after a reasonable period of time." *Id.* The Ninth Circuit found that Huizar had diligently followed up by first sending a letter of inquiry to the superior court two months after he mailed his petition, and by sending a second letter of inquiry by certified mail twenty-one months later. *Id.* at 1224. Petitioner's follow-up in this case was arguably more diligent in that it included a formal notice for request of ruling in compliance with state procedural rules and when that failed, the filing of a habeas petition directly with the California Supreme Court about four months later, as California law permits him to do.

The Court concludes that Petitioner filed his state petition when he delivered it to prison officials on October 29, 2013. As of October 29, 2013, 156 days of the statutory limitations period remained.[3] The statute of limitations was then tolled until the California Supreme Court denied the state petition on September 17, 2014, at which point the statute of limitations again began to run. When Petitioner filed his first amended petition on October 9, 2014, 134 days remained before the end of the limitations period.

---

[3] The period from April 4, 2013, to October 29, 2013, consists of 209 days

6

**D.     Conclusion**

The first amended petition was timely filed.

**III.     Certificate of Appealability**

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)   (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> (A)  the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B)  the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate

7

"something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that the first amended petition was timely filed to be debatable or wrong, or Respondent's motion to dismiss to be deserving of encouragement to proceed further. Accordingly, the Court declines to issue a certificate of appealability.

## IV.   Conclusion and Order

Respondent's motion to dismiss counts 2 through five of the first amended petition for writ of habeas corpus is hereby DENIED. The Court declines to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   **June 30, 2016**                                           /s/ *Sheila K. Oberto*
                                                                    UNITED STATES MAGISTRATE JUDGE